<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RIBBLE COMPANY, INC d/b/a SADDLE BROOK CONTROLS,** *Plaintiff*, v. **BURKERT FLUID CONTROL SYSTEMS,** *Defendant*. | **Civil Action No. 15-6173** **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Defendant Burkert Fluid Control Systems' ("Defendant" or "Burkert") second motion to dismiss. Dkt. No. 8. Plaintiff Ribble Company Inc. d/b/a/ Saddle Brook Controls ("Plaintiff" or "SBC") opposed the motion. Dkt. No. 9. For the reasons set forth below, the motion is **GRANTED**.

**I.   BACKGROUND**

SBC is a New Jersey distributor of manufactured products for corporate and individual consumers. Am. Compl ¶ 1, Dkt. No. 7. Burkert is a foreign corporation conducting business in New Jersey as a manufacturer of measurement control systems of liquids and gases. Id. ¶ 2; Compl. ¶ 2, Dkt. No. 1, Ex. A. In June 2002, Burkert, as manufacturer, entered into the Sales Distributor Agreement ("Agreement") with SBC, as distributor, for the distribution of its products throughout the northeast United States, including New Jersey, Pennsylvania, Maryland, Delaware,

and a portion of New York.  Am. Compl. ¶ 5; Love Decl., Ex. A ("Agreement"), Dkt. No. 4-2.[1]

On June 15, 2015, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Bergen County.  On August 12, 2015, Defendant removed the case to this Court.  Dkt. No. 1.  Plaintiff alleged in its initial Complaint that in July 2002, Plaintiff developed a relationship with Eppendorf North America ("Eppendorf"), which consisted of Plaintiff distributing Burkert products to Eppendorf.  Compl. ¶ 5.  In addition, the Complaint asserted that Ben Hund, the Business Unit Manager of Burkert, "surreptitiously began a pattern of direct communication and dealing through emails, telephonic communication and by other means" with Eppendorf.  Id. ¶¶ 3, 7.  Then, in September 2014, Defendant contacted Plaintiff and advised that it had decided to significantly raise the price of the products that Plaintiff ordered during the course of its relationship with Eppendorf.  Id. ¶ 8.  At around the same time, Defendant also allegedly began to negotiate its pricing directly with Eppendorf in an attempt to interrupt Plaintiff from further distribution of its products to Eppendorf.  Id.  Based on these allegations, the Complaint asserted that Defendant "engaged in a willful and malicious pattern of interference with plaintiff's right to economic prosperity and economic advantage in raising its prices and directing negotiating with Eppendorf," which caused severe economic damages to Plaintiff's business.  Compl. ¶ 9.

On September 1, 2015, Defendant filed a motion to dismiss the Complaint for failure to plead a prima facie case of tortious interference with prospective economic advantage.  Dkt. No. 4.  On March 21, 2016, this Court granted Defendant's motion to dismiss, holding that Plaintiff

---

[1] Although a district court ruling on a motion to dismiss may generally not consider matters extraneous to the pleadings, "a limited exception exists for documents that are 'integral to or explicitly relied upon in the complaint.'"  W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 (3d Cir. 2010) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).  Accordingly, the contract that governed the parties' relationship may be properly considered.

failed to plead the malice element of the tort. Dkt. No. 6.  More specifically, the Court held that Plaintiff had not sufficiently alleged that Defendant's actions were unjustifiable or legally wrongful, because the Complaint presented no facts suggesting that Defendant had "lured" Eppendorf away from its relationship with Plaintiff by "devious, improper and unrighteous means," or that Defendant had breached any contractual provision between the two parties.  Id. at 3.  Therefore, the Complaint failed to allege that Burkert and Eppendorf could not lawfully conduct business transactions directly with one another without SBC's involvement, or that Burkert had not simply exercised its equal right to conduct business with Eppendorf.  Id.

On April 8, 2016, Plaintiff filed an Amended Complaint.  Dkt. No. 7.  The Amended Complaint asserts seven counts: (1) breach of contract; (2) fraud; (3) promissory estoppel; (4) tortious interference; (5) unjust enrichment; (6) violation of the New Jersey Franchise Practices Act ("NJFPA"), N.J.S.A. § 56-10, et seq.; and (7) breach of the implied covenant of good faith and fair dealing.  Am. Compl. ¶¶ 15-42.  Although the Amended Complaint sets forth additional details regarding Plaintiff's performance and Defendant's assurances, the thrust of Plaintiff's allegations are substantially similar—that Defendant entered into the Agreement with Plaintiff and sold products through Plaintiff for a period of time, but then eventually removed Plaintiff's name from Defendant's website as an authorized distributor, raised the prices of certain products that Plaintiff had previously distributed to Eppendorf, and began communicating with and selling directly to Eppendorf.  Id. ¶¶ 4-14.  On April 22, 2016, Defendant filed the instant motion to dismiss.

3

## II. LEGAL STANDARD[2]

In considering a motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Plaintiff's fraud-based claim must also be plead with particularity. Under Fed. R. Civ. P. 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged and to prevent false or unsubstantiated charges." Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (citation omitted). To meet this requirement, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

## III. ANALYSIS

### A. Breach of Contract

Defendant argues that Plaintiff has not sufficiently alleged a breach of contract under the

---

[2] Although the Agreement includes a provision that states that it shall be construed in accordance with California law and that all litigation should be venued in Orange County, California, both parties appear to have waived the venue provision and agree that New Jersey law applies. See Def.'s Br. at 2 n.4.

4

plain language of the Agreement. The Court agrees.

To prevail on a breach of contract claim under New Jersey law, a party must show (1) the existence of a valid contract between the parties; (2) a failure of the opposing party to perform its obligations under the contract; and (3) that the breach caused the claimant to sustain damages. EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC, 440 N.J. Super. 325, 345 (App. Div. 2015) (citing Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007)). When interpreting a contract, "the terms of an agreement are to be given their plain and ordinary meaning." M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002).

Here, the Amended Complaint appears to allege that Defendant breached the contract by (1) removing Plaintiff from its website as an authorized distributor, Am. Compl. ¶ 18; and (2) engaging in direct communications and dealings with Eppendorf, Id. ¶¶ 9-14. However, Plaintiff does not point to any contractual provisions to support these alleged breaches. In fact, a review of the Agreement demonstrates that Defendant was not contractually required to list Plaintiff on its website, and was not prohibited from communicating or dealing directly with Eppendorf. See Agreement at 1-3. Indeed, because the Agreement was a non-exclusive distribution agreement, Defendant was not prohibited from engaging in direct business relationships with any prospective customer, including Eppendorf. See, e.g., ETC Int'l, Inc. v. Curriculum Advantage, Inc., 272 F. App'x 139, 142 (3d Cir. 2008) (affirming the district court's dismissal of a breach of contract claim where a distributor alleged that a manufacturer breached their distribution agreement by selling directly to the customer, because the agreement was non-exclusive); Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 279 (3d Cir. 1995) (holding that because the language of the contract provided for a non-exclusive distribution right, the manufacturer did not breach the

agreement by selling directly). Therefore, the Amended Complaint fails to state a claim for breach of contract.

### B. Fraud

Defendant argues that Plaintiff's claim for fraud fails because it is barred by the economic loss doctrine and Plaintiff failed to sufficiently plead reasonable reliance to its detriment. The Court agrees.

First, Plaintiff's fraud claim is barred by the economic loss doctrine. "The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract.'" Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Co., 66 F.3d 604, 618 (3d Cir. 1995)). Although the economic loss doctrine is unsettled in New Jersey, courts in this district generally distinguish between claims intrinsic to the contract, which are barred by the doctrine, and claims extrinsic to the contract, which are not barred by the doctrine. See id. Under this dichotomy, courts generally hold that "[f]raud claims can proceed alongside breach of contract claims where there exists fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations," as opposed to an allegation of fraud in the performance of the contract. RNC Sys., Inc. v. Modern Tech. Grp., Inc., 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (quotation omitted); see also 7-Eleven, Inc. v. Maia Inv. Co., No. 14-8006, 2015 WL 1802512, at *5 (D.N.J. Apr. 17, 2015) ("Although the New Jersey Supreme Court has yet to resolve the question, courts in this District consistently distinguish between fraud in the inducement and fraud in the performance of a contract.").

Here, Plaintiff argues that the Amended Complaint includes two fraud allegations that are extrinsic to the contract: (1) that Defendant made representations that it would continue to "honor"

the Agreement, yet circumvented Plaintiff by dealing directly with Eppendorf; and (2) that Defendant's misrepresentations fraudulently induced Plaintiff to enter the Agreement. Opp'n at 15.

Plaintiff's first fraud allegation is barred by the economic loss doctrine because it is inextricably linked to Defendant's performance under the Agreement. In support of its fraud claim, Plaintiff alleges that Defendant made "false statements and misrepresentations *concerning its intentions to honor its distributorship agreement with plaintiff* and to use its best efforts to support plaintiff in its ongoing relationship with Eppendorf, and not engage in direct contact with SBC's customers, including Eppendorf." Am. Compl. ¶ 22 (emphases added). As an initial matter, these alleged statements were made roughly twelve years after the Agreement was executed, and clearly did not induce Plaintiff to enter into the contract itself. More fundamentally, the gravamen of Plaintiff's fraud claim—that Defendant ultimately failed to perform in accordance with the Agreement—is identical to Plaintiff's breach of contract claim. Accordingly, such claims are barred by the economic loss doctrine. See, e.g., State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC, 646 F. Supp. 2d 668, 677 (D.N.J. 2009) (dismissing plaintiff's fraud claim because it was inextricable from its breach of contract claim); RNC Sys., 861 F. Supp. 2d at 451 (granting summary judgment on plaintiff's fraud claim because the allegations were not "unrelated to the performance of the contract").[3]

---

[3] To the extent Plaintiff attempts to utilize its fraud claim to rewrite the Agreement as an *exclusive* distribution agreement, this is barred by the economic loss doctrine. See SRC Const. Corp. of Monroe v. Atl. City Hous. Auth., 935 F. Supp. 2d 796, 798 (D.N.J. 2013) (noting that "the economic loss doctrine operates to bar tort claims where a plaintiff 'simply [seeks] to enhance the benefit of the bargain she contracted for'") (quoting Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 315 (2002)). It is also worth noting that the Agreement features an integration clause, which provides that "[t]he Agreement shall not be modified unless such modification is in writing and signed by authorized representatives of both parties." Agreement ¶ 10(B). The Amended Complaint does not allege that any such writing was effectuated.

Plaintiff also argues that it properly alleged extrinsic fraud because it was fraudulently induced to enter into the Agreement with Defendant.  See Opp'n at 15.  However, this claim is not asserted in the Amended Complaint.  If Plaintiff believes that it has a claim for fraudulent inducement, it should plead the claim explicitly.  See Freedom Waste Sols., Inc. v. Family Dollar, No. 15-4756, 2015 WL 5996183, at *4 (D.N.J. Oct. 14, 2015).

Moreover, even if it was not barred by the economic loss doctrine, Plaintiff's fraud claim fails because the Amended Complaint is devoid of any facts indicating that Plaintiff reasonably relied on any alleged misrepresentations or suffered any resulting damages.  To establish common law fraud, a plaintiff must demonstrate "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172–73 (2005) (quotation omitted).  The Amended Complaint fails to allege that Plaintiff suffered damages because it acted or failed to act in reliance on Defendant's purported misrepresentations.  The fraud claim asserts that "[Defendant's] actions resulted in [Plaintiff's] loss of Eppendorf as a customer," Am. Compl. ¶ 23, yet there are no facts in the Amended Complaint that indicate that this loss was the result of Defendant's misrepresentations.  For these reasons, Plaintiff's fraud claim will be dismissed.

### C. Promissory Estoppel

Defendant argues that Plaintiff fails to state a claim for promissory estoppel because it failed to allege a clear and definite promise and that it reasonably relied on Defendant's assurances to its detriment.  The Court agrees that the Amended Complaint fails to allege that Plaintiff reasonably relied on Defendant's representations to its detriment.

To state a claim for promissory estoppel, a plaintiff must allege: (1) a clear and definite

promise, (2) made with the expectation that the promisee will rely upon it, and (3) reasonable reliance upon the promise, (4) which results in definite and substantial detriment.  Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc., 357 F. Supp. 2d 788, 799 (D.N.J. 2005) (citing Lobiondo v. O'Callaghan, 357 N.J. Super. 488, 499 (App. Div. 2003)).

The Amended Complaint fails to plead facts indicating that Plaintiff relied on Defendant's representations to its detriment.  Plaintiff points to no facts suggesting that Plaintiff took any acts or suffered any damages due to its reliance on Defendant's alleged misrepresentations.  Instead, the Amended Complaint conclusorily states that "plaintiff reasonably relied on such promises to its significant detriment."  Am. Compl. ¶ 28.  Such a "formulaic recitation of the elements of [the] cause of action" is insufficient to survive a motion to dismiss.  Twombly, 550 U.S. at 555.

### D.  Tortious Interference

Defendant's tortious interference claim fails for the same reasons set forth in the Court's initial opinion.  Although Plaintiff asserts that the Amended Complaint cures these defects, it raises the same basic allegations and still fails to establish any restrictions on Defendant's ability to sell directly to Eppendorf.  Thus, Plaintiff cannot satisfy the malice element of a tortious interference claim.  Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc., 282 N.J. Super. 140, 204 (App. Div. 1995) (noting that "the gravamen of a claim for tortious interference with prospective advantage likewise is that the defendant's conduct was somehow legally wrongful, rather than merely mean or spiteful").

### E.  Unjust Enrichment

Defendant argues that Plaintiff's unjust enrichment claim should be dismissed because Plaintiff failed to allege that Defendant was unjustly enriched.  The Court agrees.

9

"The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." Associates Commercial Corp. v. Wallia, 211 N.J. Super. 231, 243 (App. Div. 1986) (citation omitted).  To prevail on a claim for unjust enrichment, a plaintiff must show that "(1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for defendant to retain [the] benefit without paying for it." Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (quotation omitted).  Said another way, a plaintiff must show that "it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).

First, Plaintiff's unjust enrichment claim fails because it simply duplicates its breach of contract claim.  In New Jersey, "[a] quasi-contract claim cannot exist when there is an enforceable agreement between parties." MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 733–34 (D.N.J. 2008) (citing Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 219 (App. Div. 1966)).  Where a plaintiff pleads the existence of a valid contract, "the express contract binds the parties, and the court has no grounds from which to find an implied promise concerning the same subject matter." Bowen v. Bank of Am., No. 14-3531, 2015 WL 5542489, at *5 (D.N.J. Sept. 18, 2015).

Plaintiff concedes in the Amended Complaint and in its briefing that there is a valid contract between the parties. See Am. Compl. ¶¶ 16-20; Opp'n at 26.  In addition, Plaintiff's unjust enrichment claim concerns precisely the same conduct that forms the basis of its breach of contract claim. For example, in its brief, Plaintiff argues that Defendant is liable for unjust enrichment because it "violated its Sale Distributorship Agreement with Plaintiff." Opp'n at 26.

Because these claims are duplicative, Plaintiff's unjust enrichment claim must be dismissed. See Am. Rubber & Metal Hose Co. v. Strahman Valves, Inc., No. 11-1279, 2011 WL 3022243, at *8 (D.N.J. July 22, 2011) (dismissing an unjust enrichment claim because it was based on the underlying agreements); SDC Info. Servs., Inc. v. Intelligroup, Inc., No. 11-05874, 2012 WL 2119156, at *2 (D.N.J. June 11, 2012) (dismissing an unjust enrichment claim because "the facts supporting the Plaintiff's unjust enrichment claim are the same facts supporting the breach of contract claims").

Second, even if Plaintiff could maintain a separate claim for unjust enrichment, it nonetheless fails. As the Court has explained, the Agreement was non-exclusive, and thus did not prohibit Defendant from communicating with and selling directly to Eppendorf. Accordingly, the Amended Complaint does not plead facts indicating that it would be unjust for Defendant to retain the benefit of doing business directly with Eppendorf.

### F.  Violation of the Implied Covenant of Good Faith and Fair Dealing

Defendant argues that Plaintiff fails to state a claim for violation of the implied covenant of good faith and fair dealing because it failed to allege that Defendant acted inequitably. The Court agrees.

To make out a claim for breach of the implied covenant, a plaintiff "must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates, 182 N.J. 210, 225 (2005) (quotation omitted). Again, because the Court holds that the Agreement did not prohibit Defendant from directly engaging with Eppendorf or any other third party, it did not deprive Plaintiff of the benefit of its bargain. See, e.g., SGS U.S. Testing Co., Inc. v. Takata Corp., No. 09-6007, 2016 WL

1382364, at *11 (D.N.J. Apr. 6, 2016) (holding that a plaintiff could not maintain a claim for breach of the implied covenant of good faith and fair dealing where the court found that the defendant had not deprived the plaintiff of the benefit of its bargain).  Accordingly, the claim must be dismissed.

### G.  Violation of the New Jersey Franchise Practices Act

Defendant argues that Plaintiff fails to state a claim under the NJFPA because Plaintiff fails to sufficiently plead that Plaintiff is a franchise under the Act.  Because the Court holds that the Amended Complaint fails to allege a violation of the Act, it does not reach the franchise issue.

The NJFPA was enacted "to remedy the disparity in bargaining power between franchisors and franchisees by protecting franchisees against indiscriminate terminations and nonrenewals." Red Roof Franchising, LLC v. Patel, 877 F. Supp. 2d 124, 137 (D.N.J. 2012), aff'd, 564 F. App'x 685 (3d Cir. 2014).  To that end, the NJFPA prohibits franchisors from, among other things, improperly terminating contracts with franchisees, including provisions in contracts that would release franchisors from liability, prohibiting the right to free association among franchisees, and imposing unreasonable standards of performance upon franchisees.  See, e.g., N.J.S.A. § 56:10-7.

Although the Amended Complaint does not cite to a specific provision of the NJFPA that Defendant allegedly violated, it appears that Plaintiff argues that Defendant breached N.J.S.A. § 56:10-5, which provides that it is a violation for a franchisee to "terminate, cancel, or fail to renew a franchise without having first given written notice setting forth all the reasons for such termination, cancellation, or intent not to renew to the franchisee at least 60 days in advance of such termination, cancellation, or failure to renew."  See Opp'n at 27.  However, the Amended Complaint does not allege that Defendant actually or constructively terminated, cancelled, or failed to renew the Agreement.  In fact, it states the exact opposite, representing that the Agreement "has

12

never been terminated by either plaintiff or defendant at any time and remains in full force and effect." Am. Compl. ¶ 40. Thus, the Amended Complaint fails to state a claim for violation of the NJFPA.

### IV. CONCLUSION

For the reasons set forth herein, Defendant's motion to dismiss is **GRANTED**. Plaintiff may file a Second Amended Complaint within thirty (30) days of the date of this Opinion or this case will be closed. An appropriate Order accompanies this Opinion.

**Dated: November 22, 2016**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States District Judge**